* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. All the parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Tort Claims Act. *Page 2 
2. All parties were correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. The issues to be determined from this hearing are as follows:
 a) Was plaintiff injured as a result of the negligence of defendant?
 b) If so, what amount, if any, damages should plaintiff recover from defendant as a result of defendant's negligence?
 * * * * * * * * * * *
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On or about August 17, 2001, Brenda Foster was an employee of the Catawba County Board of Education and was the driver of the school bus on which Joshua Coulter was a passenger.
2. On August 17, 2001, Ms. Foster was driving her school bus and returning to Murray Elementary School, which is located off Section House Road in Catawba County, North Carolina.
3. At that time, Ms. Foster was traveling on Section House Road towards Garren Drive, onto which she made a right hand turn.
4. Approximately 1/8 of a mile prior to turning right onto Garren Drive, Ms. Foster had made a stop at a trailer park to allow students off of the bus at their designated stop. This was her last stop before returning to school. *Page 3 
5. As Ms. Foster was leaving this bus stop, she saw Joshua Coulter in the rear of the bus directly behind her. He was either bent over or kneeling and appeared to be pulling at something.
6. Ms. Foster asked Joshua to sit in his seat.
7. Thereafter, Ms. Foster's attention was focused on turning onto Garren Drive.
8. Ms. Foster slowed her bus, checked her reference points and mirrors and specifically recalled looking out her bus door and seeing the curb, as she was trained to do in order to miss hitting the curb.
9. As she was making the turn, Ms. Foster estimated her speed to be less than five miles per hour.
10. As Ms. Foster was turning onto Garren Drive, she saw a small, dark vehicle coming off of Garren Drive at a high rate of speed toward her school bus and dart across the centerline.
11. Ms. Foster reacted to the oncoming vehicle in her lane by turning the school bus sharply to the right causing the rear tire of the school bus to go up on the curb and off again.
12. As this was occurring, Ms. Foster heard glass breaking and then heard her son, Casey Donnelly, call Joshua's name. Casey told Ms. Foster that Joshua was hurt and she continued the short distance to the school entrance where she stopped and immediately went to Joshua.
13. Ms. Foster sent Casey and Jordan Garren into the school to get the principal and Karen Coulter, Joshua's mother.
14. Ms. Coulter immediately came to the school bus and saw an injury to Joshua's face and neck. *Page 4 
15. Ms. Foster and Ms. Coulter took Joshua into the school and awaited the ambulance. The ambulance took Joshua to Frye Regional Emergency Room. At the emergency room, Joshua was treated for cuts to his head, lip, left side of his face and neck. He had three staples in his head, three stitches in his lip and forty-five to forty-eight stitches on the left side of his face.
16. As a whole Ms. Foster's testimony is credible. Though there are slight differences in Ms. Foster's reported statements, they are not inconsistent to the point of making Ms. Foster's testimony not believable.
17. The scar on the left side of Joshua's face was initially fourteen centimeters in length and four centimeters wide. After treatment, the scar is approximately eleven to twelve centimeters in length and three point eight (3.8) centimeters in width. The scar narrows from his neck to just left of his mouth.
18. Dr. Munoz testified that as the scar healed, it caused the side of his mouth to draw down.
19. Prior to this incident, Joshua was receiving treatment from Dr. Munoz and Diane Sanford, a counselor with Carolina Treatment Associates.
20. Prior to this incident, Joshua had been diagnosed with ADHD (Attention Deficit Hyperactivity Disorder), PTSD (Post Traumatic Stress Disorder), Anxiety Disorder and had been receiving treatment for the same, including counseling and medication.
21. In his first visit with Ms. Sanford after this incident, she noted that Joshua had sustained scars as a result of a motor vehicle accident on August 17, 2001. She noted this again in two other visits at regularly scheduled sessions, which were every two to four weeks. *Page 5 
21. On Joshua's second visit with Dr. Munoz after this incident, Dr. Munoz had to increase Joshua's medication. Dr. Munoz could not state with certainty whether the injury on the school bus caused this increase in medication; however, he testified that the injury did have an affect.
22. Dr. Munoz testified that the accident and severity of the scar had an impact on Joshua psychologically. However, there were no new diagnoses made for Joshua after this incident. There are no references made in Dr. Munoz's notes as to what affect, if any, this incident had on Joshua's self-esteem or self-image.
23. Plaintiff sought treatment with Dr. Siciliano, a plastic surgeon. Under his care, Joshua underwent steroid injections which caused the scar's thickness to lessen, but not its length or width.
24. Dr. Siciliano testified that unless Joshua undergoes future treatment, his scar is permanent and may reduce slightly in appearance.
25. Dr. Siciliano explained that a possible future treatment would be scar excision, where he would start at the smallest end of the scar, closing it in steps beginning with the narrowest point, wait six months and proceed to the next session.
26. Dr. Siciliano testified that if Joshua chose to undergo the excision process, there would be a minimum of three to four different surgeries at three to four different times and the cost for his time would be $1,000.00—$1,500.00 for each surgery and for the hospital it would be $5,000.00—$6,000.00 for each surgery. The total cost would be dependent on the number of surgeries.
27. Dr. Siciliano testified that even if Joshua chose to have the excision surgery, there is only a 50/50 chance that it would improve the scar. *Page 6 
28. In addition to those expenses, Joshua's medical expenses totaled $4,455.15 as a result of the August 17, 2001 injury.
29. Jewell Blount and Darlene Woodruff, both school bus drivers at Murray Elementary, testified that they have run up on the curb as they were turning onto Garren Drive from Section House Road.
30. There was no evidence presented by plaintiff as to what speed was too fast for that turn. The other bus drivers testified that they routinely and safely made the turn onto Garren Drive from Section House Road going ten to fifteen miles per hour.
31. The only testimony as to Ms. Foster's speed on August 17, 2001 was Ms. Foster's testimony that she was traveling less than five miles per hour.
32. There was insufficient evidence to support a finding that Ms. Foster was in violation of any law in her operation of the bus.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to recover on a civil claim for negligence the claimant must prove (1) the existence of a duty to him; (2) breach of that duty by the defendant (the named employees thereof in a tort claim); (3) injury sustained; and (4) as a proximate result of the breach of duty. Plaintiff has failed to show that Brenda Foster was negligent in the operation of her school bus on August 17, 2001. Simmons ex rel. Simmonsv. Columbus County Bd. of Educ., 171 N.C. App. 725, 615 S.E. 2d 69
(2005).
2. Plaintiff failed to prove that defendant was negligent and that negligence caused the damages of which plaintiff complains. Id. *Page 7 
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim is DISMISSED.
2. Each side shall bear its own costs.
This the __ day of July, 2006.
 S/________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/________________ BUCK LATTIMORE CHAIRMAN
 S/________________ THOMAS J. BOLCH COMMISSIONER *Page 1